Appeal No. 2013-1461

_____

# In the United States Court of Appeals for the Federal Circuit

_____

JACK T. KRAUSER,

*Plaintiff-Appellant,*

v.

BIOHORIZONS, INC., BIOLOK INTERNATIONAL, INC., and BIOHORIZONS IMPLANT SYSTEMS, INC.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the Southern District of Florida in case no. 10-CV-80454, United States District Judge Kenneth A. Marra

_____

## BRIEF OF DEFENDANTS-APPELLEES

Christopher N. Sipes
Michael N. Kennedy
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
202-662-6000

# CERTIFICATE OF INTEREST

**Counsel for the Appellees certifies the following:**

**1.  The full name of every party or amicus represented by me is:**

> BioHorizons, Inc., BioHorizons Implant Systems, Inc., and BioLok
> International, Inc.

**2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

> The parties named above in (1) are the real parties in interest.

**3.  All parent corporations and any publically held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

> Effective December 30, 2013, Henry Schein, Inc. (NASDAQ:  HSIC) owns
> approximately 60% of PR1 Acquisition Corp. which owns 100% of the
> stock  in Defendant-Appellee BioHorizons, Inc., which is the common
> parent corporation of the other two Defendants-Appellees.

> BioHorizons, Inc. owns 100% of the stock of BioLok Acquisition Corp.,
> which in turn owns 100% of the stock of BioLok International Inc.
> BioHorizons, Inc. also owns 100% of the stock of BioHorizons Implant
> Systems, Inc.

> HealthPointCapital Partners L.P. and HealthPointCapital Partners II, L.P.,
> neither of which are publicly-traded entities, also collectively own more than
> 10% of the capital stock of PR1 Acquisition Corp.

**4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:**

Covington & Burling LLP: Christopher N. Sipes, Michael N. Kennedy, Mark L. Gelsinger, Joseph Scott St. John, Jeremy D. Cobb, Charles H. Davis

Mintz Levin Cohn Ferris Glovsky & Popeo: Richard G. Gervase, Seth R. Goldman, Timur E. Slonim, Ari N. Stern, Sara J. Crasson, Krishna D. Patel, Meredith M. Leary

Haile, Shaw & Pfaffenberger, P.A.: Gary A. Woodfield

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

STATEMENT OF RELATED CASES .................................................................... vi

JURISDICTIONAL STATEMENT .......................................................................... 1

STATEMENT OF THE ISSUES ............................................................................. 2

PRELIMINARY STATEMENT ............................................................................... 4

STATEMENT OF THE CASE ................................................................................ 7

STATEMENT OF FACTS ....................................................................................... 9

      A.    Dr. Krauser's work for Minimatic in the late 1980s ............................... 9

      B.    Dr. Krauser's lawsuits against Minimatic ................................................ 10

      C.    The October 1996 Settlement Agreement ................................................ 11

      D.    The BioHorizons Tapered Internal Implants ........................................... 14

      E.    Dr. Krauser's claim of default under the October 1996
           Settlement Agreement and assertion of a right to the
           BioHorizons Tapered Internal Implant ...................................................... 15

SUMMARY OF THE ARGUMENT ....................................................................... 19

ARGUMENT .......................................................................................................... 24

I.     Standard of review ........................................................................................... 24

II.    Dr. Krauser's "contract-based" theory of ownership was waived because Dr.
      Krauser disclaimed reliance on contract in the District Court ...................... 25

III.   Dr. Krauser's "contract-based" argument is, in any event, legally baseless
      and contrary to the plain language of the contract ........................................ 29

      A.    Dr. Krauser's "contract-based" claim remains an impermissible
           effort to assert ownership of unpatented ideas ........................................ 30

i

B. The October 1996 Settlement Agreement does not establish Dr. Krauser's ownership of the "Dental Implant System" ........................... 39

IV. The District Court's judgment can be affirmed on the independent ground of its correct interpretation of "currently" in the October 1996 Settlement Agreement to refer to the time the contract was executed .............................. 44

A. The District Court's interpretation of "currently" is the only reading consistent with the remainder of the Agreement ...................... 47

B. The District Court's interpretation of "currently being manufactured by the Debtors" constitutes an independent ground of affirmance ................................................................................................. 51

CONCLUSION ................................................................................................ 53

PROOF OF SERVICE ..................................................................................... 54

CERTIFICATE OF COMPLIANCE ................................................................ 55

# TABLE OF AUTHORITIES

**Cases**

*Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324 (11th Cir. 2004) ..................... 28

*Aldana v. Del Monte Fresh Produce N.A.*, 578 F.3d 1283 (11th Cir. 2009) ........... 28

*Am. Int'l Grp., Inc. v. Cornerstone Bus., Inc.*, 872 So. 2d 333 (Fla. Dist. Ct. App. 2004) ................................................................................................................. 36

*Aronson v. Quick Point Pencil Co.*, 440 U.S. 257 (1979) ..................................... 35, 37

*Barakat v. Broward Cnty. Hous. Auth.*, 711 So. 2d 1193 (Fla. Dist. Ct. App. 2000) ................................................................................................................. 46

*Bluebonnet Sav. Bank, F.S.B. v. United States,* 466 F.3d 1349 (Fed. Cir. 2006) ................................................................................................................ 29, 41

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) .... 6, 22, 30, 33

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed. Cir. 2012) ................. 27

*Commercial Capital Res., LLC v. Giovannetti*, 955 So. 2d 1151 (Fla. Dist. Ct. App. 2007) ............................................................................................................... 45

*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169 (11th Cir. 2005) ..................................... 25

*Culbreath Isles Prop. Owners Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 8:12-CV-2928-T-26EAJ, 2013 WL 6038044 (M.D. Fla. Nov. 5, 2013) ................................................................................................................. 45

*Eberhardt v. Waters*, 901 F.2d 1578 (11th Cir. 1990) ................................................ 25

*Frulla v. CRA Holdings, Inc.,* 543 F.3d 1247 (11th Cir. 2008) ................................ 46

*Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368 (Fed. Cir. 2005) ............. 28

*Hotel Employees v. Davis*, 981 P.2d 990 (Cal. 1999) ................................................ 45

*HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270 (Fed. Cir. 2012) ...................... 27

*John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*, 443 F. App'x 396 (11th Cir. 2011) ........................................................................................ 46

*Kel Homes, LLC v. Burris,* 933 So. 2d 699 (Fla. Dist. Ct. App. 2006) .................... 49

*Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370 (Fed. Cir. 2013) ......................... 24

*Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709 (Fed. Cir. 1998) ....................... 29

*Key v. Allstate Ins. Co.*, 90 F.3d 1546 (11th Cir. 1996) ............................................. 46

*Kipp v. Kipp*, 844 So. 2d 691 (Fla. Dist. Ct. App. 2003) ...................................... 45, 46

*Krauser v. BioHorizons, Inc.*, 903 F. Supp. 2d 1337 (S.D. Fla. 2012) ....................... 8

*Lambert v. Berkley S. Condo. Ass'n*, 680 So. 2d 588 (Fla. Dist. Ct. App. 1996) ........................................................................................................................ 46

*McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917 (Fed. Cir. 1995) ........................... 35

*Morales v. Zenith Ins. Co.*, 714 F.3d 1220 (11th Cir. 2013) ...................................... 24

*Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082 (Fed. Cir. 1989) ...................................................................................................................... 35

*Rentrop v. Spectranetics Corp.*, 550 F.3d 1112 (Fed. Cir. 2008) .............................. 28

*Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420 (Fed. Cir. 1997) ................ 28

*Saha v. Aetna Casualty & Sur. Co.*, 427 So. 2d 316 (Fla. Dist. Ct. App. 1983) ........................................................................................................................ 46

*Sanofi-Aventis v. Apotex Inc.*, 659 F.3d 1171 (Fed. Cir. 2011) ................................ 25

*Shuford Dev. Co. v. Chrysler Corp.*, 449 F.2d 429 (5th Cir. 1971) .......................... 48

*Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286 (M.D. Fla. 2009) ......................... 46

*Smith v. Shelton*, 970 So. 2d 450 (Fla. Dist. Ct. App. 2007) ..................................... 45

*Tavory v. NTP, Inc.*, 297 F. App'x 976 (Fed. Cir. 2008) ............................................ 31

*Tobin v. Mich. Mut. Ins. Co.*, 398 F.3d 1267 (11th Cir. 2005) .................................. 25

iv

*Ultra-Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369 (Fed. Cir. 2005).......passim

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298 (Fed. Cir. 2003)..................................................................................................... 38

*Waner v. Ford Motor Co.*, 331 F.3d 851 (Fed. Cir. 2003) ...................... 22, 30, 32, 39

*Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943 (Fla. 2013)............................ 45

*Wawrzynski v. H.J. Heinz Co.*, 728 F.3d 1374 (Fed. Cir. 2013) ............................... 35

*Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067 (11th Cir. 2003)........... 36

*Whitley v. Royal Trails Prop. Owners Ass'n, Inc.*, 910 So. 2d 381 (Fla. Dist. Ct. App. 2005) ..................................................................................... 45

## Statutes

11 U.S.C. § 362............................................................................................................ 14

28 U.S.C. § 1295 ..................................................................................................... 1, 10

28 U.S.C. § 1331 ........................................................................................................... 1

28 U.S.C. § 1332 ........................................................................................................... 1

28 U.S.C. § 1338 ........................................................................................................... 1

## Other Authorities

Fed. R. Civ. P. 56 ....................................................................................................... 29

## STATEMENT OF RELATED CASES

There is one related action pending in the District Court. On September 11, 2012, Plaintiff-Appellant filed an action seeking correction of inventorship of four patents owned by an affiliate of Defendants-Appellees. *Krauser v. Evollution IP Holdings et al.*, No. 9:12-cv-80977-KAM (S.D. Fla. 2012). This inventorship cause of action was originally asserted as part of the action now on appeal, but Dr. Krauser withdrew it in the face of a motion to dismiss. *See* A923-25; A1262.

In the action now on appeal, Defendants-Appellees' motion for attorneys' fees remains pending. A44-46. The motion was brought pursuant to a fee-shifting provision in Paragraph 15 of the October 1996 Settlement Agreement. A822.

## JURISDICTIONAL STATEMENT

The Southern District of Florida had subject matter jurisdiction over this case pursuant to both 28 U.S.C. § 1331 (2012), per 28 U.S.C. § 1338(a), as Plaintiff-Appellant's claims arise under the patent laws, and 28 U.S.C. § 1332(a)(1), due to complete diversity of citizenship and an amount-in-controversy greater than $75,000.

This Court has subject-matter jurisdiction over this appeal, from a final judgment of the District Court, under 28 U.S.C. § 1295(a)(1), because Dr. Krauser's claims "aris[e] under" the patent laws. A2140. Indeed, the Eleventh Circuit has already concluded—after full briefing by the parties—that this Court has subject-matter jurisdiction, granting Defendants-Appellees' motion to dismiss or transfer Dr. Krauser's appeal to this Court. *Id.*

## STATEMENT OF THE ISSUES

This is an appeal from the District Court's order granting summary judgment in favor of Defendants-Appellees ("Defendants"). In short, the District Court concluded, as a matter of law, that Plaintiff-Appellant Jack Krauser's ("Plaintiff" or "Dr. Krauser") alleged contribution of ideas to one of the Defendants twenty-five years ago did not afford Plaintiff any ownership rights in the Defendants' present-day dental implant system, including ownership rights in the patents or regulatory clearances (known as FDA 510(k) clearances) associated with that system, or in any other intangible property. A21. The issues presented for review are:

1.     Whether Dr. Krauser waived his present argument that the October 1996 Settlement Agreement, A809-906, provides him with ownership of the "Dental Implant System" and associated intangible property currently owned by Defendants, when he specifically and repeatedly represented to the District Court in opposing summary judgment that he was not relying on the Agreement (or any other contract) as the source of his ownership rights.

2.     Whether the District Court correctly held that Dr. Krauser could not base his claim to ownership of Defendants' intangible property on Dr. Krauser's alleged contribution of ideas, where Dr. Krauser now re-styles his claim as "contract-based" but continues to pursue impermissible patent-like rights and

remedies and concedes the contract itself does not provide for transfer of any rights or intangible property to him.

3. Whether the District Court correctly held that the October 1996 Settlement Agreement does not afford Dr. Krauser ownership rights in any intangible property held by Defendants, when the Agreement licenses an unrelated patent as well as rights Dr. Krauser "may have" in the dental implant system "currently being manufactured" by one of the Defendants, and when (as Dr. Krauser admitted below) the agreement is written as a quitclaim, conveying no ownership rights to him, but providing only the procedural opportunity to have a court to determine his rights..

4. Whether the District Court correctly held that the phrase "currently being manufactured" in Paragraph 8 of the October 1996 Settlement Agreement was unambiguous and should be afforded its ordinary meaning as referring to products manufactured as of October 1996, as opposed to whatever products happen to be manufactured at the time Dr. Krauser declares a default on the Agreement, and whether, if so, summary judgment was properly granted where the only dental implants Dr. Krauser seeks were first developed and marketed a decade after 1996 and Dr. Krauser has conceded that they are different from the earlier implants.

3

# PRELIMINARY STATEMENT

This appeal involves the right of the Defendants to continue to manufacture and sell a highly successful line of dental implants known as the BioHorizons Tapered Internal. More than 20 years ago, Plaintiff Dr. Krauser was a consultant for Minimatic Implant Technology, Inc. ("Minimatic"), a predecessor of one of the three Defendants, BioLok International, Inc. ("BioLok"). He had no involvement in the design or approval of the BioHorizons Tapered Internal line of implants, which were developed and first marketed more than a decade after his consulting work for Minimatic. Dr. Krauser's claim is that, by dint of a settlement agreement he entered into with Minimatic in 1996 and BioLok's alleged default of its obligation under that agreement in 2007, he is entitled to ownership of BioHorizon's present-day dental implant line such that Defendants must cease to make, use, or sell those implants and instead convey to him both the regulatory licenses (called FDA 510(k) clearances) and patent licenses governing their manufacture and use.

Unsurprisingly, despite two years of litigation, Dr. Krauser has failed to identify any legally cognizable basis for his sweeping claim of ownership in Defendants' line of dental implants. In opposing summary judgment in the District Court, he asserted ownership based on his alleged contribution of design ideas that he argued were ultimately incorporated into BioHorizons present-day implants.

4

However, Dr. Krauser admits he did not patent his purported ideas (the one patent he did obtain, now expired, does not cover BioHorizons' implants), and he makes no claim of trade secrets. The District Court thus properly rejected his claim based on the prohibition under federal patent law on the creation of state-law ownership rights in ideas in the public domain.

On appeal, Dr. Krauser purports to abandon any ownership interest in ideas, and instead rests his claim on the October 1996 Settlement Agreement. Yet he admits that (as the District Court found) that agreement does not itself convey rights to him but instead appears to rely on the agreement as merely preserving a pre-existing procedural right to bring suit. That is, Dr. Krauser asserts in his brief, as the foundation of his purportedly contract-based claim, that "ownership of the Dental Implant System never left Krauser," Krauser Br. 34, but he never explains when or how that "ownership" interest first came into being.

Even aside from the fact that Dr. Krauser waived this new theory by failing to raise it below, it remains contrary to federal patent law and legally baseless. The intangible property rights Dr. Krauser seeks—the regulatory licenses and patents that permit manufacture of the BioHorizons Tapered Internal implants—were obtained and are owned by Defendants in accordance with established legal forms. Dr. Krauser has never been the owner of these licenses or

patents, and federal law does not permit the creation of a state-law ownership right in an implant design that alters that result.

In holding federal patent law the exclusive mechanism for asserting an ownership interest in disclosed ideas, the Supreme Court warned of the "inherently ephemeral nature of property in ideas, and the great power such property has to cause harm to the competitive policies which underlay the federal patent law." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162-63 (1989). That warning applies with great force here, where a former consultant from two decades past has sought to disrupt Defendants' business by purporting to claim ownership of Defendants' present-day implants, developed by Defendants at great cost and incorporating innovative and patented features. Entertaining such a claim would cast a chill through research industries, where products (such as those at issue here) incorporate numerous ideas from many sources. The intellectual property system simply cannot function if any alleged contributor to the design of any aspect of a commercial product can disrupt investment-backed expectations simply by laying claim to "ownership" of that product decades after the fact without first bothering to obtain a patent. The District Court properly recognized that federal law prohibits such a claim, entering judgment against Dr. Krauser. That judgment should be affirmed.

## STATEMENT OF THE CASE

Dr. Krauser originally filed suit in Florida state court. A758-68. He withdrew that action, A71, and then almost immediately re-filed in the same state court. He then filed an amended complaint seeking both a correction of inventorship of several patents and a declaration of ownership over something he called a "Dental Implant System." A55-75. Defendants removed the case to the Southern District of Florida, on the basis of both federal question and diversity jurisdiction. A48-51. Defendants then moved to dismiss. A27. In opposing that motion, which the District Court denied-in-part, A28, Dr. Krauser elected to abandon his cause of action seeking correction of inventorship. A1996; A2028.

After conducting fact and expert discovery, Defendants moved for summary judgment, arguing that Dr. Krauser's claims were legally deficient as: (1) barred by the applicable Florida statute of limitation on specific performance, (2) without merit as Dr. Krauser had no ownership rights in the dental implant system as a matter of law, or (3) precluded by the express terms of the Settlement Agreement, which limited Dr. Krauser to seeking a declaration of his rights to the dental implants manufactured by Minimatic in 1996, not the implants manufactured by BioHorizons Implant Systems. A1239-67. In response, Dr. Krauser denied relying upon a contract for his ownership rights, asserting ownership instead upon his allegation that the Defendants' dental implants

7

"incorporated Dr. Krauser's individual ideas." A1312. The District Court granted the motion and entered final judgment, agreeing with Defendants on all issues except the statute of limitations. In short, the District Court held that, even assuming *arguendo* that an "event of default" had occurred, Dr. Krauser had no ownership rights in the "dental implant system currently being manufactured by [BioLok]" or any of Defendants' other intangible property. A15-21, *see also Krauser v. BioHorizons, Inc.*, 903 F. Supp. 2d 1337, 1348-50 (S.D. Fla. 2012). As to interpretation of Paragraph 8, the court agreed that Dr. Krauser was limited to seeking ownership of the dental implants manufactured by Minimatic in 1996, but found it unnecessary to consider whether that limitation would preclude this action, since it had already determined that Dr. Krauser's claim to ownership in those implants was legally deficient. A15-16.

Dr. Krauser filed two motions for reconsideration, A2026, A2034, which were both denied. A2137-39.[1] Dr. Krauser then appealed the final judgment to the Eleventh Circuit, A45, which transferred the appeal to this Court, as Dr. Krauser's claims arise under the patent laws. A2140 (citing 28 U.S.C. § 1295(a)(1)).

---

[1] One of these orders granted-in-part one of the motions, which was styled as a motion for "clarification" of the effect of the District Court's entry of judgment on a co-pending action for correction of inventorship filed by Dr. Krauser. A2138-39.

## STATEMENT OF FACTS

**A.    Dr. Krauser's work for Minimatic in the late 1980s**

Dr. Krauser is a periodontist. A2. In May 1988, he began working

with Minimatic, which is a predecessor of Defendant BioLok.[2] In 1987, Minimatic

began to develop a line of dental implant products, including implants and

prosthetics. A603 ¶¶ 4-5, 7-9; A631 ¶ 3. The Minimatic Implant System was

introduced to the market in 1991, accompanied by several regulatory approvals.

A603 ¶ 9, A604-05 ¶ 15.

In March 1991, Dr. Krauser and Minimatic formalized their previous

arrangement through a Consulting Agreement, A636-42, supplemented in May

1992 with an Addendum. A645-48 (collectively, the "1991 Agreement"). As

"consultant[] and collaborator[]," Dr. Krauser agreed to provide collaboration

services, perform clinical studies, and lecture on behalf of Minimatic. A636-37 ¶

1. In exchange, the 1991 Agreement provided Dr. Krauser with certain forms of

compensation, such as commissions on Minimatic's future sales, reimbursement

for clinical trials and speaking arrangements, and limited rights to receive copies of

drawings submitted for regulatory approval. A637-38 ¶ 2. To be clear, this appeal

---

[2] Minimatic Implant Technology, Inc. was acquired by American Bio-Dental Corporation prior to   bankruptcy filings in 1996. A1007. American Bio-Dental Corporation would later be acquired by BioLok International, Inc. after American Bio-Dental Corporation exited bankruptcy proceedings in 1998. *Id.* "Minimatic" and "BioLok" will be used interchangeably in this brief.

can be resolved, and the judgment affirmed, without resolving whether Dr. Krauser

actually contributed any ideas to Minimatic.

It now appears to be undisputed that, as the District Court held, A19-

20, the 1991 Agreement did not provide Dr. Krauser with any ownership rights in

any intangible property.  *See* Krauser Br. 7-8, 27.  Indeed, this agreement expressly

addressed ownership of the regulatory filings (called "510(k)s")[3] and design

drawings resulting in part from Dr. Krauser's work with Minimatic:

> "Krauser will at all times have rights to an receive copies
> of the drawings of Minimatic submitted for 510(k)'s
> since these drawings are submitted by Minimatic and list
> Krauser as 'client'; but, **in no way does the right to the
> drawings give Krauser the right to use the drawings,
> other than for and on behalf of Minimatic**."  A638
> ¶ 2.K (emphasis added).

> "**Drawings and 510(k)'s are the property of Minimatic**
> and its stockholders and represent/form the basis under
> which the Company exists as to product and value, hence
> any future right must be approved by the Board of
> Directors and Stockholders as the By-Laws of the
> Corporation dictate." *Id.* (emphasis added).

**B.    Dr. Krauser's lawsuits against Minimatic**

Dr. Krauser's consulting relationship with Minimatic ended in 1993

when Dr. Krauser filed suit against Minimatic in Florida state court.  A658 38:10-

14.  This lawsuit ("the 1993 Litigation") alleged that Minimatic had breached the

---

[3] The term "510(k)" refers to Section 510 of the Federal Food, Drug, and Cosmetic
Act, which concerns the FDA's procedures for clearance of medical devices for
marketing.  *See* A1190-92.

1991 Agreement described above. A695-713. Dr. Krauser sought a declaratory judgment that he was "entitled to the return and use of the drawings and updates, 510(k)s, and related documents," A701 ¶ 20, as well as damages for breach. *See, e.g.*, A698-99 ¶¶ 1, 2.

        In 1994, Dr. Krauser brought a second lawsuit in the Southern District of Florida ("the 1994 Litigation"), this one for patent infringement. A719 ¶ 12. The asserted patent in that case, U.S. Patent No. 5,316,476 ("the '476 Patent"), named Dr. Krauser as the sole inventor. A680. As relevant to this appeal, the '476 Patent disclosed a threadless cylindrical implant having longitudinal grooves. *See* A683 col.1 ll.7-10. The '476 Patent does not disclose or claim any threaded implant designs (so-called "screw" implants), such as the BioHorizons Tapered Internal dental implants over which Dr. Krauser now seeks ownership. A677 390:6-25; A949 143:4-14; A1134 ¶¶ 28-29. The '476 patent expired in 1998 for failure to pay maintenance fees. A974.

### C.    The October 1996 Settlement Agreement

        In 1996, while both the 1993 and 1994 Litigations were pending, American Bio-Dental and Minimatic filed for bankruptcy protection under Chapter 11, and Dr. Krauser's suits were subject to the automatic stay provided by 11 U.S.C. § 362 (2012). A731-32. The first attempt at resolution of the stayed actions was a potential settlement agreement between Minimatic and Dr. Krauser

signed on May 28, 1996 ("May 1996 Settlement Agreement").  A183-220.  As part

of the May 1996 Settlement Agreement, Minimatic covenanted that it owned the

regulatory clearances for the dental implant system at issue and agreed that, if the

bankruptcy court approved the settlement, it would transfer half-interest in the

regulatory clearances to Dr. Krauser.  A199 ¶ 12.  The bankruptcy court did not

approve the May 1996 Settlement Agreement, and instead the court vacated the

agreement on motion of the Debtors.  A952-53.

Dr. Krauser's claims against Minimatic were ultimately resolved

through a different settlement agreement signed by the parties on October 16,

1996.  A809-906.  The October 1996 Settlement Agreement was approved by the

bankruptcy court and became part of the reorganization plan for Minimatic and

American Bio-Dental (by then, renamed BioLok).  A979; A986.  Unlike the

vacated May 1996 Settlement Agreement, the October 1996 Settlement Agreement

did not purport to provide Dr. Krauser with any ownership interest in the dental

implant system sold by Minimatic at that time.  Rather, Dr. Krauser's claims were

resolved through an upfront payment to satisfy Dr. Krauser's pre-petition claims

against the bankruptcy estate, A812 ¶ 1, combined with an obligation of future

monthly payments to Dr. Krauser based on a percentage of Minimatic's sales for a

period of 10 years ending on October 31, 2006.  A813-17 ¶ 3-4.  In particular,

under Paragraph 3(a), the "dental implant products" on which monthly payment

were owed to Dr. Krauser were those set forth in Minimatic's "current product catalog," which was attached as an exhibit to the Agreement.  A814, A831-885.

As part of the October 1996 Settlement Agreement, Dr. Krauser signed a Limited Release, A901-02, which released all "claims and demands whatsoever, in law or equity, which [Krauser] ever had, or now has, . . . against [Minimatic], from the beginning of the world to the effective date (defined below) of these presents."  A901.  However, Dr. Krauser did receive a limited procedural opportunity, per Paragraph 8 of the October 1996 Settlement Agreement, to institute suit for a declaration of what rights, if any, he had in the "dental implant system currently being manufactured" by Minimatic.  Specifically, Paragraph 8 provided that,

> "In the event of a default (as defined above) . . . . Krauser shall have the option, but not the obligation, to institute suit against the Debtors for money damages and/or **a declaration of his rights in and to the dental implant system currently being manufactured by the Debtors**, as well as any and all 510(k) filings, related documents and drawings of the Debtors."  A819 (emphasis added).

A819 (emphasis added).  As Dr. Krauser's counsel explained, the purpose of Paragraph 8 was to provide Dr. Krauser with the opportunity, in the event of default, to seek a judicial determination of his rights in the dental implant system being manufactured; it did not itself convey any ownership rights on Dr. Krauser.  A2004 7:22-8:2 ("The contract was drafted in such a way that if there's a breach,

13

we can return to where we were in 1996, which was on the eve of going to court to get a declaration. The defendants did not agree ipso facto that if there's a breach we're the owner.").

### D. The BioHorizons Tapered Internal Implants

After the bankruptcy court approved the reorganization plan, Minimatic merged into BioLok in 1997. A1007. BioLok was then acquired by an affiliate of HealthpointCapital, LLC ("Healthpoint") in 2006. *Id.*

In the years after 1997, one of BioLok's competitors was a separate company named BioHorizons Implant Systems, Inc. ("BHIS"). A1008. This company was also acquired by Healthpoint in 2006. A1007. The third Defendant, BioHorizons, Inc., is a holding company that current holds the stock of BHIS and (indirectly) BioLok. *Id.* Thus, only BioLok is the corporate successor of Minimatic.

Dr. Krauser now seeks ownership over the BioHorizons Tapered Internal Implant system, which is currently being manufactured and sold by BHIS (not BioLok or BioHorizons, Inc.). A273. The BioHorizons Tapered Internal implant is a threaded ("screw") implant that is anatomically tapered to reduce bone loss during implantation and that utilizes an internal connection system. A1120; A1134. These implants are available with horizontal, micro-etched grooves on the upper ("coronal") portion of the implant, known as Laser-Lok, that help to regulate

and channel epithelial tissue growth.  A1121.  In stark contrast, the old Minimatic

products referenced in the October 1996 Settlement Agreement included one

threaded implant with an external connection and three threadless, non-tapered

implants that also did not use an internal connection; none were anatomically

tapered and none came with micro-etching on the corona.  A1133.  Dr. Krauser

conceded below that the "BioHorizons Tapered Internal Implant system certainly

incorporates an expansion and improvement over the Minimatic 1991 Implant

System and the BioLok 1996 Implant System, including, without limitation, the

addition of Laser-Lok…."  A1326 ¶ 41 (Krauser Aff.); *see also* A2038-40.  The

BioHorizons Tapered Internal implant is not sold under any 510(k) clearances

issued to Minimatic or BioLok.  A1120.

### E.    Dr. Krauser's claim of default under the October 1996 Settlement Agreement and assertion of a right to the BioHorizons Tapered Internal Implant

From the time that the October 1996 Settlement Agreement was

approved by the bankruptcy court through February 2007, BioLok, Minimatic's

successor in interest, made payments of approximately $812,291 in cash and issued

504,000 shares of BioLok common stock to Dr. Krauser in accordance with the

terms of the agreement.  A1010-11 ¶¶ 16-19.

On October 15, 2009—thirteen years after the execution of the

October 1996 Settlement Agreement and two-and-a-half years after completion of

its ten-year payment term—Dr. Krauser for the first time provided formal notice to Defendants that he believed BioLok had failed to comply with its obligations under the Agreement and was purportedly in default. A908-19. Refusing any effort by Defendants to cure the alleged default,[4] Dr. Krauser instead initiated this action in Florida state court seeking in his Amended Complaint a declaration that he was the "inventor and owner" of the dental implant system, associated patents, and other intangible property. A55-75, A74-75 wherefore clauses *g-i*.

On April 1, 2010, Defendants removed this action to the Southern District of Florida. A48-51 ¶¶ 7, 8. Upon removal to federal court, Defendants moved to dismiss Dr. Krauser's complaint under Rule 12(b)(6), in part because it failed to state a cause of action for correction of inventorship. Dr. Krauser withdrew his inventorship cause of action instead of defending against that portion of Defendants' motion. A1996; A2028. The resulting Second Amended Complaint, however, still requested a declaration that, for example:

> "he is owner of the subject matter set forth in all of the Defendants' patents based on his '476 Patent, including without limitation, all patents set forth in Composite Exhibit 'F' . . . the Defendants' 510(k) registrations . . .

---

[4] During this time Defendants made several efforts to resolve any dispute over the amount owed Dr. Krauser and thereby cure any claim of default. Dr. Krauser refused any such cure, however, and never specified any amount of money his claims he is owed. A1010-11 ¶¶ 16-19. Indeed, despite two years of extensive discovery, Dr. Krauser has never identified any amount of money owed. A1119 ¶ 16; A1979 ¶ 16.

and that he is the owner of the Dental Implant System, now commercially known as the BioHorizons Tapered Internal Implant System." A274 wherefore clauses *g-i*.[5]

Defendants moved for summary judgment on May 14, 2012. A1239-71. In the memorandum attached to Dr. Krauser's motion in opposition to summary judgment, Dr. Krauser repeatedly took the position that no contract granted him an ownership interest in the Defendants' dental implant system and associated intangible property. *See, e.g.*, A1298 ¶ 54 ("they [Defendants] never once point out a single contractual obligation Krauser is looking to enforce against them, nor can they"). Dr. Krauser was explicit about the basis of his claims, stating that the Defendants' dental implant system "**has always incorporated** Krauser's individual ideas, inventions and other intellectual property . . . . Accordingly, to this day, Krauser remains the owner of the intellectual property underlying the subject dental implant system, and the system itself." A1312 ¶ 100 (emphasis added); *see also* A1327 ¶ 43 (Krauser Decl.). Dr. Krauser also made clear that he was not seeking specific performance or money damages as remedies for the Defendants' alleged breach of contract. A1292 ¶ 31 (damages), A1298-1300 (specific performance), A1304 n.10 (damages).

---

[5] This was the operative Complaint when the District Court entered judgment for Defendants.

At oral argument, Dr. Krauser maintained his position regarding the non-contract source of his ownership rights. *See, e.g.*, A2004 7:17-8:2 (Dr. Krauser's counsel stating that "It's not as . . . a result of the breach that we are automatically declared [the owner]. We still have to prove to you that we are, in fact, the owner. . . . The defendants did not agree ipso facto that if there's a breach we're the owner."), A2019 67:1-19 ("Where did I ever say that it [the October 1996 Settlement Agreement] does give me rights? I don't think I've ever said that…We never have stated anywhere in our papers that it does give us the right. What it gives us is the right to sue for a declaration that we are the owner.").

Consistent with Dr. Krauser's position, the District Court recognized that Dr. Krauser did not allege that any contract (including the October 1996 Settlement Agreement) conferred on him any "rights" in the "dental implant system currently being manufactured" by BioHorizons. A20 n.8. After carefully reviewing all other possible sources of ownership, including any ownership over the ideas underlying the dental implant system, the District Court correctly held that "it is not enough for [Krauser] to claim ownership of the at-issue intellectual property by stating that the dental implant system incorporates certain features that reflect his ideas. The Court therefore finds, as a matter of law, that [Krauser] has no ownership rights to the aforementioned intellectual property." A21.

18

On October 29, 2012, Dr. Krauser filed a motion for reconsideration that was denied by the District Court.  A2034-55; A2137-39.  This appeal followed.

## SUMMARY OF THE ARGUMENT

This appeal concerns what the Plaintiff, Dr. Krauser, refers to as "ownership" of a highly successful line of dental implants known as the BioHorizons Tapered Internal implants.  Dr. Krauser had no involvement in the design or approval of those implants, which were developed and first marketed within the last ten years by BHIS, one of the Defendants.  Instead, more than twenty years ago, Dr. Krauser worked as a consultant for a different company, Minimatic, a predecessor of Defendant BioLok, which in 2007 became a corporate affiliate of BioHorizons.  Dr. Krauser's claim is that, by dint of a settlement agreement he entered into with BioLok's predecessor in October 1996 and BioLok's alleged default of its obligations under that agreement, he is entitled to be declared the owner of BHIS's present-day dental implant line.

In the proceedings below, Dr. Krauser based his claim of ownership on the assertion that, during the course of his consulting work for Minimatic in the late 1980s and early 1990s, he contributed design ideas allegedly now present in the BioHorizons Tapered Internal line of implants.  In the words of his counsel:

> [O]ur position is that since Dr. Krauser created the
> system, since he's the one that conceived of it, since he's
> the one that gave all the information to Minimatic on
> how to build a prototype, it's always been his system.

A2004 9:6-10. Dr. Krauser's claim below was thus predicated upon an asserted

ownership right in ideas—ideas neither patented by Dr. Krauser nor maintained as

trade secrets—and hence properly rejected by the District Court as contrary to the

long-settled rule that unpatented ideas are freely available for use. A19.

On appeal, Dr. Krauser does not challenge the District Court's

conclusion that Dr. Krauser could not claim ownership based on an alleged

contribution of ideas, but instead attempts to recast his claim as "purely contract-

based." Krauser Br. 28. Expressly abandoning any reliance upon his purported

contribution of ideas, Dr. Krauser now asserts that his claim rests solely upon the

terms of the October 1996 Settlement Agreement. *Id.* 28 & n.7. But Dr. Krauser's

new, contract-based theory of ownership is fundamentally flawed for at least three

independent reasons.

*First*, in the face of Defendants' showing that Dr. Krauser's claims

were untimely under Florida's one-year limitations period for specific enforcement

of a contract, Dr. Krauser abandoned his contract-based theory of ownership.

Explaining that the sole relevance of the October 1996 Settlement Agreement was

the provision (Paragraph 8) allowing him a procedural right to reassert a claim of

ownership in the event of a default by Defendants, Dr. Krauser expressly

20

disclaimed the contract as the basis for his claim itself.  A2019 66:22-67:19;

A1298 ¶ 54.  Thus, Dr. Krauser has waived reliance on a contract-based theory of

ownership on appeal.

*Second*, even if Dr. Krauser had not waived his contract-based theory

of ownership, it would still be legally deficient for two separate reasons: both

because it amounts to nothing more than a repackaged and improper attempt to

own unpatented ideas, and because it is contrary to the plain meaning of the

contract.

Dr. Krauser concedes that, as the District Court found, the October

1996 Settlement Agreement does not provide for the transfer of ownership of any

"Dental Implant System" to him (let alone transfer of the intangible property

associated with the dental implants), A19-21, but instead argues that absence to be

irrelevant because, in Dr. Krauser's words, "ownership of the Dental Implant

System never left Krauser."  Krauser Br. 34.  That is, Dr. Krauser is **not** basing his

claim of ownership of BHIS's dental implants in the Settlement Agreement itself,

but rather is claiming an ownership interest outside of, and preceding, that

Agreement—namely, arising from his claim to have contributed ideas incorporated

in their design.

Dr. Krauser's assertion that the October 1996 Settlement Agreement

**preserves** his claim to ownership begs the question of the source of his alleged

ownership rights. And, in identifying the purported source of those rights, Dr.

Krause expressly contradicts his assertion that they are based in contract:

> [E]ver since its inception in 1991, the dental implant
> system … has always incorporated Dr. Krauser's
> individual ideas, inventions and other intellectual
> property, which he has never given up….

*Id.* 35 n.11 (quoting A1312). This is precisely the rejected theory of ownership in

ideas that federal patent law forbids and that Dr. Krauser disavows in his brief. *Id.*

at 28 n.7. As the Supreme Court has made clear, "once an inventor has decided to

lift the veil of secrecy from his work, he must choose the protection of a federal

patent or the dedication of his idea to the public at large." *Bonito Boats,* 489 U.S.

at 149; *see also Waner v. Ford Motor Co.*, 331 F.3d 851, 857 (Fed. Cir. 2003)

("ideas can only be protected under intellectual property law by the patent

system"). Dr. Krauser cannot avoid this prohibition through the semantic artifice

of calling his claim "contract-based".

That Dr. Krauser does not pursue a true contract claim is unsurprising,

given the plain language of the Settlement Agreement. Far from providing Dr.

Krauser with any ownership interest, that Agreement provides instead a license to

"any and all rights" he "may have." A813 ¶ 2. There is nothing in the Agreement

that actually gives Dr. Krauser such rights, as opposed to affording Dr. Krauser a

limited opportunity, in the event of default, to have a court determine what rights

he may have—a point conceded by Dr. Krauser's counsel below. A2004 7:17-25.

That Dr. Krauser now purports to base his ownership rights in what amounts to a quitclaim shows the empty nature of his "contract-based" claim.

*Third*, as yet another independent ground for affirming the judgment, the October 1996 Settlement Agreement upon which Dr. Krauser purports to rely expressly limits him to seeking a declaration of his rights "to the dental implant system currently being manufactured by [Minimatic/BioLok]." A819 ¶ 8. As the District Court found, this provision limits Dr. Krauser to asserting rights to the dental implants being manufactured in 1996, at the time the Agreement was entered, A15-16, thereby allowing Minimatic, as it emerged from bankruptcy, to develop new dental implant lines free from any pre-existing claim.

While the District Court's conclusion that Dr. Krauser could not claim ownership in unpatented ideas obviated the need to consider whether the BioHorizons Tapered Internal implants Dr. Krauser seeks in this case are the same as the 1996 system, A21, the grant of summary judgment may be affirmed on the basis that there is no genuine dispute that they are different. Plaintiff has conceded the BioHorizons Tapered Internal implants were first developed and marketed ten years later (in 2007) by a different company (BHIS), pursuant to different regulatory licenses, and incorporating a different array of features than those found in the dental implants manufactured by Minimatic in 1996. A1290-91 ¶¶ 22, 23 n.5; A1325-26 ¶¶ 37-40. Indeed, Dr. Krauser himself describes the BioHorizons

23

Tapered Internal implant as a "new dental implant system" that "certainly incorporates an expansion and improvement over the Minimatic 1991 Implant System and the BioLok 1996 Implant System."  A1324-27 ¶¶ 36, 41 (Krauser Aff.); *see also* A1291 n.5 ("Obviously, the 1996 and 2009/2012 versions of the dental implant system are different, as it has evolved over time (like any other product on the market).")   Because Dr. Krauser does not seek a declaration of ownership of any of the dental implants manufactured by Minimatic/BioLok in 1996, but rather seeks only to be declared the owner of the Tapered Internal implants developed ten years later by BHIS, the express terms of the October 1996 Settlement Agreement limiting him to seeking a declaration of his rights in the dental implants "currently being manufactured" by Minimatic also suffices to preclude this lawsuit.

## ARGUMENT

### I.     Standard of review

The Eleventh Circuit reviews a district court's grant of summary judgment *de novo*.  *Morales v. Zenith Ins. Co.*, 714 F.3d 1220, 1226 (11th Cir. 2013); *see also, e.g., Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1372 (Fed. Cir. 2013) (regional circuit's standard of review applies).  Under the familiar standard governing summary judgment motions, *see* Fed. R. Civ. P. 56(a), a party opposing summary judgment "must set forth specific facts showing that there is a

24

genuine issue for trial," *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990), and "speculation or conjecture" is insufficient to create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

This Court also reviews a district court's interpretation of a contract, such as a settlement agreement, under the substantive law of the relevant regional circuit. *Sanofi-Aventis v. Apotex Inc.*, 659 F.3d 1171, 1178 (Fed. Cir. 2011). Interpretation of a contract and determination of whether a contract is ambiguous are questions of law which the Eleventh Circuit would review *de novo*. *Tobin v. Mich. Mut. Ins. Co.*, 398 F.3d 1267, 1274 (11th Cir. 2005).

## II. Dr. Krauser's "contract-based" theory of ownership was waived because Dr. Krauser disclaimed reliance on contract in the District Court

On appeal, Dr. Krauser accuses the District Court of ignoring his "contractual claim to ownership of the System." Krauser Br. 24. Not so. During the summary judgment hearing, the Court specifically asked Dr. Krauser's counsel if Plaintiff was relying upon the October 1996 Settlement Agreement as the basis for his claim to own Defendants' line of dental implants. Dr. Krauser responded in the negative:

> THE COURT: Are you saying that—that this contract provides that he is the owner in the event of a default?
>
> MR. GACHE: **No. No.** We started with that. **It doesn't mean that we are, in fact, the owner**…. We have never stated anywhere in our papers that it does

25

give us the right.  What it gives us is the right to sue for a
declaration that we are the owner.

A2019 66:22-67:15 (emphasis added).

Dr. Krauser abandoned a contract theory of ownership deliberately
and for strategic reasons—to respond to Defendant's argument that Florida's one-
year limitations period for specific performance of a contract precluded Dr.
Krauser from asserting ownership under the October 1996 Settlement Agreement.
*See, e.g.*, A1250-53.  To avoid the statute of limitations, Dr. Krauser expressly
denied that his claim of ownership was based on the October 1996 Settlement
Agreement, stating that Defendants "never once point out a single contractual
obligation Krauser is looking to enforce against them, **nor can they**."  A1298 ¶ 54
(emphasis added).  Dr. Krauser then reiterated the point at oral argument on the
motion, explaining that the terms of the Settlement Agreement re-opened the door
to pursuing a claim for ownership but did not itself provide the basis for his
ownership claim.  *See* A2004 7:17-20 ("It's not as a result of the breach that we are
automatically declared.  We still have to prove to you that we are, in fact, the
owner."); A2019 67:12-15 ("We never have stated anywhere in our papers that it
does give us the right.  What it gives us is the right to sue for a declaration that we
are the owner.").

In addition, when asked by the Court to explain the basis for his ownership claim, Dr. Krauser did not point to provisions of the contract, but rather explicitly asserted a right of ownership in ideas:

> But our position is that since Dr. Krauser created the system, since he's the one that conceived of it, since he's the one that gave all the information to Minimatic on how to build a prototype, it's always been his system.

A2004 9:6-10.  And again:

> If you're asking me what's the basis of those rights, it's property ownership.  I am the owner.  This is not an intellectual property case.  I am the owner of this implant system, just like you can own anything else that's out there.

A2020 72:5-9.

The District Court relied on Dr. Krauser's representations, holding that "[w]hile Plaintiff does argue that the October Settlement Agreement authorizes him to file suit for a declaratory judgment regarding his rights in and to the dental implant system currently being manufactured by Defendants, he does not argue that this settlement agreement transfers ownership rights to him."  A20 n.8.

This Court has repeatedly held that a party **cannot** raise on appeal an argument it did not clearly present below.  *See*, *e.g.*, *HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1281-82 (Fed. Cir. 2012); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012); *see also Fuji Photo Film Co.*

*v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) (waiver cannot be overcome by a passing mention; argument must be raised in a manner "sufficient to apprise the District Court that it must address another point of law").  As this Court has explained,

> No matter how independent an appellate court's review of an issue may be, it is still no more than that—a review. With a few notable exceptions, such as some jurisdictional matters, appellate courts do not consider a party's new theories, lodged first on appeal.  If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court.

*Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997); *accord Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1117 (Fed. Cir. 2008).  The Eleventh Circuit follows the same rules.  *See, e.g., Aldana v. Del Monte Fresh Produce N.A.*, 578 F.3d 1283, 1296 n.6 (11th Cir. 2009) (argument waived if not presented to the district court with some particularity); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (addressing arguments not raised in the district court "would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court").

Here, Dr. Krauser did not simply fail to present his "contract-based" theory of ownership to the District Court, he affirmatively disclaimed any reliance on such a theory.  Accordingly, he has waived the argument and cannot seek reversal of the District Court's ruling on this basis.  *See Key Pharms. v. Hercon*

28

*Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998) ("The impropriety of asserting a position which the trial court adopts and then complaining about it on appeal should be obvious on its face, and litigants hardly need warning not to engage in such conduct.").[6] As Dr. Krauser now expressly abandons reliance on any other theory, Krauser Br. 23, the District Court's grant of summary judgment can be affirmed on this basis alone.

### III.  Dr. Krauser's "contract-based" argument is, in any event, legally baseless and contrary to the plain language of the contract

Even if this Court were to consider Dr. Krauser's contract-based argument on appeal, it would not provide grounds for reversal of the District Court's judgment, both because Dr. Krauser cannot circumvent the prohibition on state law rights of ownership in ideas simply by styling the right "contract-based" and because, in any event, his claim of ownership is contrary to the plain language of the contract.

---

[6] In his brief to this Court, Dr. Krauser quotes from his interrogatory responses earlier in the case as support for his assertion of a contract-based theory below, Krauser Br. 23-24, but fails to disclose his subsequent disavowal of that theory in opposing summary judgment. Also, Dr. Krauser may not point to arguments made for the first time as part of his Motion for Reconsideration to overcome his waiver of a contract theory of ownership. *Bluebonnet Sav. Bank, F.S.B. v. United States,* 466 F.3d 1349, 1361 (Fed. Cir. 2006).

## A. Dr. Krauser's "contract-based" claim remains an impermissible effort to assert ownership of unpatented ideas

The District Court correctly held that Krauser "cannot base a claim of ownership…on his contributions to the dental implant system or Defendants' use of his ideas." A19. "[O]nce an inventor has decided to lift the veil of secrecy from his work, he must choose the protection of a federal patent or the dedication of his idea to the public at large." *Bonito Boats*, 489 U.S. at 149; *see also Waner*, 331 F.3d at 857 ("ideas can only be protected under intellectual property law by the patent system"). Dr. Krauser does not challenge the District Court's ruling of law on this point and expressly disclaims here any right to claim ownership based on his alleged contribution of ideas to the design of Defendants' dental implants. Krauser Br. 28 n.7 ("Krauser does not now assert ownership based on his contribution of ideas."). Instead, Dr. Krauser argues that the prohibition does not apply to "claims to enforce contracts pursuant to state law," a category he asserts encompasses his claim. Krauser Br. 29.

But merely styling his case as "contract-based" is not sufficient to avoid the federal prohibition. Instead, the permissibility of his claim depends upon the nature of his allegations and claims for relief. *See, e.g., Ultra-Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369, 1377-78 (Fed. Cir. 2005) ("Federal law preempts state law that offers 'patent-like protection' to discoveries unprotected under federal patent law." (quoting *Bonito Boats*, 489 U.S. at 156)). A claim is

30

preempted if it rests on patent-like allegations or seeks patent-like relief.  *See id.* at

1382 (holding unfair competition claim preempted because "Ultra-Precision seeks

a patent-like remedy for Ford's conduct in making, using, and selling products

embodying information Ultra-Precision was not successful in protecting under the

federal patent laws and which is free for all the world to enjoy"); *see also Tavory v.*

*NTP, Inc.*, 297 F. App'x 976, 983 (Fed. Cir. 2008) (unfair competition claim not

preempted because it sought "restitution for unfair use of confidential information,

not any patent-like protection over an unpatentable or publicly-available

technology").

       Dr. Krauser's claim fails this test, for even re-styled as a "contract"

claim, it remains founded upon patent-like allegations of ownership of ideas and

seeks the patent-like remedy of exclusion.  For example, as the District Court

found, A20, the October 1996 Settlement Agreement does not provide for the

transfer or assignment of Defendants' dental implant systems, or any associated

intangible property to Dr. Krauser.  Dr. Krauser does not dispute this but instead

asserts that no transfer of ownership is necessary because "ownership of the Dental

Implant System never left Krauser."  Krauser Br. 34.  But this makes clear that Dr.

Krauser is not claiming ownership based on the provisions of the Settlement

Agreement itself, but rather based on the assertion of rights purportedly arising

outside of, and preceding, the contract.

Dr. Krauser's argument that the Settlement Agreement preserves his ownership rights begs the question of where those rights came from in the first place. His only allegation in this regard is his assertion of ownership based on an alleged contribution of ideas: "[E]ver since its inception in 1991, the dental implant system … has always incorporated Dr. Krauser's individual ideas, inventions and other intellectual property, which he has never given up, except via the terminated conditional license he granted to BioLok under the October 1996 Settlement Agreement." Krauser Br. 35 n.11 (quoting A1312). This is precisely the sort of patent-like allegation of ownership in unpatented ideas forbidden by federal law. *See Waner*, 331 F.3d at 856-57 (holding a state law claim preempted based on contribution of unpatented ideas). Indeed, Dr. Krauser now concedes he cannot claim ownership on this basis, Krauser Br. 28 n.7, leaving his assertion of ownership entirely without legal foundation.

Rather than provide any legal basis for Dr. Krauser's purported ownership rights, Dr. Krauser instead attempts to muddy the water by arguing "[t]here is no contractual or record evidence whatsoever to support the district court's implicit, threshold finding that BioHorizons was and is the present owner of the Dental Implant System." Krauser Br. 35-36. This is nonsense, at least because missing from Dr. Krauser's brief is any description of what it means to "own" a dental implant system. Defendants "own" the BioHorizons Tapered

Internal line of dental implants because they own the intangible property that enables them to manufacture and sell those implants—namely, the engineering drawings, the FDA 510(k) clearances, and the associated patents. Dr. Krauser does not dispute that Defendants own these things—indeed, he expressly seeks "transfer" of the 510(k)s and concedes Defendants' ownership of the patents. Krauser Br. 23 n.4 & 27 n.6. In any event, Dr. Krauser's 1991 contract with Minimatic expressly makes clear that the drawings and 510(k)s belonged to Minimatic, not Krauser. A638 ¶ 2.K. And Defendants' ownership of the patents is confirmed by the record of assignment establishing a clear chain of title from the named inventors. There is no genuine dispute concerning ownership of any of this intangible property. Dr. Krauser's attempt to efface Defendants' ownership rights through invocation of a right of ownership in the dental implant system under state law runs directly contrary to the Supreme Court's holding in *Bonito Boats* that ownership in ideas is controlled by federal law. *See Bonito Boats*, 489 U.S. at 163 ("Given the inherently ephemeral nature of property in ideas, and the great power such property has to cause harm to the competitive policies which underlay the federal patent laws, the demarcation of broad zones of public and private right is 'the type of regulation that demands a uniform national rule.'"). As Dr. Krauser does not dispute the District Court's finding that he has no contractual right to have this property transferred to him, this ends the matter.

Nor does the **relief** Dr. Krauser seeks sound in contract but is instead impermissibly patent-like. Dr. Krauser does not seek damages or payment of any monies owed under the contract. Nor does he seek specific enforcement of any contractual provision (a remedy that would, in any event, be barred under the Statute of Limitations). Indeed, Dr. Krauser has expressly disclaimed such traditional contract remedies. A1292 ¶ 31 (damages), A1298-1300 (specific performance), A1304 n.10 (damages).

Instead, Dr. Krauser seeks an impermissible, patent-like remedy. This is inherent in his request for a declaration of "ownership" of Defendants' dental implant system, which would require the court to recognize a new species of intangible property to be owned—namely, that concerning the manufacture, use, and sale of dental implants defined by their design features. Moreover, Dr. Krauser overtly seeks a patent-like right to exclude Defendants from making, using, or selling dental implants embodying the design he claims to own. Krauser Br. 27 n.6 ("BioHorizons no longer can make, use, or sell the Dental Implant System that belongs to Krauser."). This is plainly the sort of remedy federal patent law forbids. *See Ultra-Precision*, 411 F.3d at 1380 (unjust enrichment claim preempted where the plaintiff sought a "royalty-like award").[7]

---

[7] By contrast, this Court has found that traditional contract remedies, such as money damages, relief from forfeiture of contract rights, or permitting the resale of goods as mitigation for breach under the Uniform Commercial Code, are not

Dr. Krauser erroneously asserts that his claim is permissible under the Supreme Court's decision in *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257 (1979). *Aronson*, however, merely held that a claim for sums owed under a license contract was permissible even if the licensed design was not patentable. *Id.* at 263-65. It did not permit claims predicated upon patent-like rights or remedies, and indeed, emphasized that enforcement of the contract there "does not prevent anyone from copying" the licensed design. *Id.* at 264. Dr. Krauser argues, in this case that, "[a]s in *Aronson*, enforcement of the contract does not prevent anyone not bound by the contract from copying the system to the extent it is now in the public domain." Krauser Br. 31 n.8. But this mischaracterizes both the scope of the remedy he seeks and the holding in *Aronson*.

*First*, Dr. Krauser is wrong that the remedy he seeks runs only against those bound by the contract. To the contrary, the party that developed and now manufactures and markets the BioHorizons Tapered Internal implants is BHIS. The October 1996 Settlement Agreement was entered into by Minimatic/BioLok. BioHorizons and BHIS are separate legal entities from BioLok; indeed BHIS was a

---

preempted by federal patent law for the breach of contracts related to intellectual property rights. *Wawrzynski v. H.J. Heinz Co.*, 728 F.3d 1374, 1380 (Fed. Cir. 2013) (damages); *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 921-22 (Fed. Cir. 1995) (resale of rejected goods as mitigation); *Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989) (relief from forfeiture of contract rights).

competitor of Minimatic and BioLok until it too was acquired by Healthpoint in 2006. A1007. Under settled law, neither BioHorizons nor BHIS are bound by an agreement entered into by BioLok or its predecessor Minimatic, and hence are not bound by the October 1996 Settlement Agreement. *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074-75 (11th Cir. 2003) (stating that a company may not bind its parent or affiliate companies without express permission—which has not been granted here); *Am. Int'l Grp., Inc. v. Cornerstone Bus., Inc.*, 872 So. 2d 333, 336 (Fla. Dist. Ct. App. 2004).[8] Thus, all the relief Dr. Krauser seeks in the case—to prevent the manufacture and sale of the BioHorizons Tapered Internal implant and to obtain the regulatory licenses and the "subject matter" of the patents—runs against BHIS, an entity that was not even a party to October 1996 Settlement Agreement and is not bound by its terms.

---

[8] This is consistent with the express terms of the October 1996 Settlement Agreement, which provides (in Paragraph 16) that:

> This Settlement Agreement shall be binding on all of the parties hereto, including each of their successors and assigns, specifically including any successor corporation to either Minimatic and/or ABC, or any subsidiary thereof, and Krauser."

A822. BioLok is the corporate successor to Minimatic and was acquired by an affiliate of HealthpointCapital, LLC in 2006. A1007. BHIS is a former competitor to BioLok who was also acquired by HealthpointCapital in 2006. *Id.* BioHorizons is a holding company that owns the stock of BHIS and BioLok. *Id.* Therefore, neither BHIS, an affiliated company, nor BioHorizons, a parent company, is a "successor" or "assign" to Minimatic.

Second, *Aronson* does not support even Dr. Krauser's attempt to obtain ownership rights against a party to the contract, BioLok. In *Aronson*, the defendant agreed to pay certain sums to the plaintiff in order to sell a keyholder, the design of which was disclosed confidentially to the defendant. In permitting a contract action to recover those sums, the Court emphasized that "[e]nforcement of [the Defendant's] agreement, however, **does not prevent anyone** from copying the keyholder." 440 U.S. at 257 (emphasis added). Thus, *Aronson* makes clear that the plaintiff could **not** have used the contract to exclude anyone, including the Defendants, from using the licensed design—precisely the relief Dr. Krauser seeks.

This Court too has made clear that federal patent law does not permit the use of state law claims to obtain patent-like remedies, even if those remedies are limited to the particular defendants in the action. In *Ultra-Precision*, for example, this Court held preempted the assertion of unjust enrichment claims that sought a "royalty-like" award against the defendant for its alleged use of the plaintiff's later-published information. *See* 411 F.3d at 1380 ("federal patent law generally precludes a plaintiff from recovering a royalty-like award premised on defendant's making, using, offering to sell, or selling an unpatented discovery after plaintiff makes the discovery available to the public"). The fact that the remedy sought by *Ultra-Precision* was confined to the defendant, and limited to the defendant's alleged use of the disputed technology, did not make the remedy

permissible.  Because the defendant had the same right to use public, unpatented information as any other member of the public, any permissible relief could not go beyond the "incremental benefit to Ford over and above the benefit the general public received when Ultra-Precision published the technical information it gave to Ford."  *Id.* at 1379-80.

*University of Colorado Foundation, Inc. v. American Cyanamid Co.*, 342 F.3d 1298, 1305 (Fed. Cir. 2003), upon which Dr. Krauser erroneously relies, Krauser Br. 29, similarly supports summary judgment here.  The *American Cyanamid* plaintiffs did not seek a use-based remedy for the defendant's alleged use of the plaintiffs' technology.  Instead, the plaintiffs sought damages for the alleged "incremental" benefits the defendant received by obtaining its own patent based on its use of the plaintiffs' confidential information in violation of a confidentiality agreement.  *Id.* at 1307.  In affirming the damages awarded, this Court expressly distinguished the exclusive-rights-based remedy forbidden by the Court in *Waner:*

> Unlike the inventor in *Waner*, **the Doctors here did not seek to prevent the use of information they placed in the *public domain*;** rather, they seek to prevent Cyanamid from unjustly securing the '634 patent and obtaining the incremental profits by copying significant portions of the Doctors' *confidential* manuscript

> describing the invention. The district court's unjust enrichment remedy was specifically limited to the incremental profits Cyanamid wrongfully made by obtaining the '634 patent and did not encompass total profits Cyanamid made by selling a product incorporating the Doctors' invention.

*Id.* (emphasis added). The decision thus makes clear that, even if limited to just the defendant, an exclusion-based remedy would be forbidden. Here Dr. Krauser seeks precisely the remedy the Court forbade in *American Cyanamid*—to prevent Defendants from using information within the public domain.[9]

In short, whether or not styled as "contract-based," both Dr. Krauser's allegations and the relief he seeks is premised on a claim of ownership rights in unpatented ideas. Such a claim is fundamentally at odds with the federal patent system and was properly dismissed by the District Court below. *See Waner*, 331 F.3d at 856 (affirming dismissal of state law claim based on the defendant's alleged use of the plaintiff's designs that were neither trade secrets nor patented).

### B. The October 1996 Settlement Agreement does not establish Dr. Krauser's ownership of the "Dental Implant System"

Moreover, even if Dr. Krauser could pursue a contract-based claim here, his claim would nonetheless be legally deficient because nothing in the

---

[9] While **Defendants** have obtained patents on their implant designs, Dr. Krauser admits he did not patent those designs and makes no claim of trade secrets. Indeed, there was no confidentiality agreement between Dr. Krauser and Minimatic, A1000, and whatever design ideas Dr. Krauser contributed to Minimatic have long since become public through incorporation into the dental implants manufactured and sold by Minimatic.

October 1996 Settlement Agreement provides Dr. Krauser with ownership of Defendants' dental implants, let alone the intangible property associated with those implants. Instead, the contract is clearly and unambiguously written in quitclaim style—providing for the liquidation of rights **claimed** by Dr. Krauser without conveying any such rights on him.

Dr. Krauser cites Paragraph 2 of Agreement as showing "that Krauser conditionally licensed … 'the dental implant system' (defined as dental implant products being sold by BioHorizons)." Krauser Br. 21, 26. However, the actual language of Paragraph 2 of the Agreement provides simply that

> Krauser will conditionally grant an exclusive license by separate document, a copy of which is attached hereto as *Exhibit "A"*, **any and all rights he may have in** the Patent and the dental implant system currently being manufactured by the Debtors.

A813 (emphasis added). As the emphasized language makes clear, Paragraph 2 does not confer any rights upon Dr. Krauser but rather provides a license of whatever rights he "may" have. That is, the language is written as a quitclaim.[10]

---

[10] Indeed, the narrow scope of even the rights being claimed by Dr. Krauser in the contract is confirmed by the language of the referenced License Agreement, attached as Exhibit A to the Settlement Agreement. Paragraph 2.1 of the License states that Dr. Krauser "hereby grants to [Minimatic/BioLok] an exclusive temporary license to manufacture, use and sell **that certain dental implant device currently known as a cylinder implant** which incorporates, either in whole or in part, some or all of the inventions claimed in [Dr. Krauser's '476] Patent." A825 ¶

Dr. Krauser also argues that the District Court incorrectly failed to analyze Paragraphs 1 and 3 of the Agreement as evidence of Dr. Krauser's ownership over the dental implant system. Krauser Br. 26-27.[11] However, Dr. Krauser has waived reliance on these paragraphs because he did not raise them in his opposition to summary judgment and instead invoked them for the first time on reconsideration. *Bluebonnet Sav. Bank, F.S.B.*, 466 F.3d at 1361; *see also* A2138. In any case, these paragraphs do not help Dr. Krauser.

With regard to Paragraph 1 of the Settlement Agreement, Dr. Krauser quotes the following sentence fragment: "Krauser's existing claims shall be

---

2.1 (emphasis added). The reference to "cylinder implants" is to a separate type of dental implant, lacking threads, that Minimatic was manufacturing at the time. A677 390:9-25; A1129-31 (discussing the distinguishing features of dental implants). The Minimatic product catalog attached to the October 1996 Settlement Agreement divides the implants into "cylinder" and "screw" types, as Dr. Krauser's retained expert acknowledged. A837; A944 113:3-17; A2041-43. BioHorizons Tapered Internal implants are screw, not cylinder, implants and do not fall within the claims of the (now expired) '476 patent. In short, Paragraph 2 of the Settlement Agreement and the attached conditional license convey no rights of ownership to Dr. Krauser at all, let alone rights over the BioHorizons Tapered Internal implant.

[11] It is unclear whether Dr. Krauser is also relying upon the provision of Paragraph 8 providing him, in the event of a default, with "the option, but not the obligation, to institute suit against Debtors for money damages and/or a declaration of rights in and to the dental implant system currently being manufactured by the Debtors, as well as any and all 510(k) filings, related documents and drawings of the Debtors." A819 ¶ 8. In any event, this provision merely provides Dr. Krauser with the opportunity in the event of default to have a court determine his ownership rights; it does not provide any ownership rights itself.

liquidated, **undisputed**, and allowed as general unsecured claims…"  Krauser Br.

27 (quoting A812, emphasis and omissions in Dr. Krauser's brief).  Dr. Krauser

does not explain how the word "undisputed" confirms ownership, and he appears

to ignore both the preceding word "liquidated" and the remainder of the sentence,

which explains how Dr. Krauser's claim is being liquidated, namely through

payment of a lump sum.  The sentence in full reads as follows:

> In order to resolve all prepetition claims of Krauser
> against Debtors, as well as Krauser's claim for injunctive
> relief in the Federal Court action, Krauser's existing
> claims shall be liquidated, undisputed and allowed as
> general unsecured claims against the Debtors'
> bankruptcy estates in the collective sum of $720,000.00.

A812.  Thus, far from conveying ownership to Dr. Krauser of any property, the

sentence simply confirms the parties' agreement to liquidate fully his claims in

exchange for the agreed-upon sum.[12]

Dr. Krauser also chides the District Court for failing to analyze the

provision of Paragraph 3 which states that, "[a]s payment to Krauser for Debtors'

continued sale of the dental implant products which comprise their dental implant

system, **which Krauser maintains he has rights in** and to but which Krauser is

willing to forego for so long as said payments are fully and timely made …"

---

[12] Moreover, Dr. Krauser never claimed breach of the payment obligations of
Paragraph 1 and has conceded that any such claim would, in any event, now be
waived.  A1292 ¶ 31.  Hence, any rights of Dr. Krauser's that are the subject of
Paragraph 1 were liquidated by the express terms of that provision.

Krauser Br. 26 (quoting A813, emphasis added).  But, as the emphasized language

shows, this too is written in quitclaim style.  Thus, it confirms at most that Dr.

Krauser was **maintaining** that he believed he had rights to Minimatic's dental

implants and not that he, in fact, had such rights.  There is no admission here, or

elsewhere, that Krauser in fact had any ownership rights to those implants.

In sum, there is nothing in the October 1996 Settlement Agreement

that conveys ownership rights upon Dr. Krauser.  Indeed, Dr. Krauser's counsel

conceded this below: "Where did I ever say that it [the October Settlement

Agreement] does give me rights?  I don't think I've ever said that…We never have

stated anywhere in our papers that it does give us the right.  What it gives us is the

right to sue for a declaration that we are the owner."  A2019 67:1-19.

Moreover, Dr. Krauser's concession that the October 1996 Settlement

Agreement does not provide for the transfer of any rights, Krauser Br. 32, also

contradicts his "contract-based" claim.  As discussed above, Defendants

indisputably are the present owners of the BioHorizons Tapered Internal line of

implants by virtue of their ownership of the intangible property—the drawings,

510(k) clearances, and patents—permitting their manufacture.  Thus, there is no

contractual provision conveying to him the regulatory or patent ownership he

seeks.  Krauser Br. 23 n.4 & 27 n.6.

43

**IV.    The District Court's judgment can be affirmed on the independent ground of its correct interpretation of "currently" in the October 1996 Settlement Agreement to refer to the time the contract was executed**

The foregoing makes clear that the District Court's grant of summary judgment may be affirmed on the basis that Dr. Krauser has no legally cognizable ownership rights in any of Defendants' dental implants or associated intangible property.  That judgment may be affirmed as well on the independent ground that Dr. Krauser is limited by the express terms of Paragraph 8 of the October 1996 Settlement Agreement to seeking a determination of his rights to the dental implant systems being manufactured by Minimatic/BioLok in 1996 and hence is precluded by that provision from seeking a declaration of ownership in a different line of implants, the BioHorizons Tapered Internal, manufactured by a different company, BHIS.

Paragraph 8 states that Dr. Krauser's declaration of his rights can only be to "the dental implant system currently being manufactured by the Debtors." A819.  The District Court correctly held as a matter of law that "the term 'currently being manufactured' applies only to the dental implants that were being manufactured in October 1996.  In other words . . . the term 'currently' referred to the time the contract was executed.  It did not refer to the time the litigation was brought or tried." A15.  Based on this finding, the District Court determined that "[Krauser] would only be entitled to a declaration of his rights in the dental

44

implant systems manufactured in 1996." A16. This interpretation is perfectly in keeping with how other courts have construed the term "currently" in other contexts, *see, e.g., Hotel Employees v. Davis*, 981 P.2d 990, 1004 (Cal. 1999), and consistent with how dictionaries have defined the term, A955-57.

Under Florida law, construction of unambiguous contract terms is a pure issue of law appropriate for summary judgment. *Smith v. Shelton*, 970 So. 2d 450, 451 (Fla. Dist. Ct. App. 2007). A contract is unambiguous if it is not "susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract." *Commercial Capital Res., LLC v. Giovannetti*, 955 So. 2d 1151, 1153 (Fla. Dist. Ct. App. 2007). Only reasonable interpretations can create an ambiguity. *Culbreath Isles Prop. Owners Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 8:12-CV-2928-T-26EAJ, 2013 WL 6038044, at *6-8 (M.D. Fla. Nov. 5, 2013) (citing *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 950–51 (Fla. 2013)). Thus, a court should not consider a construction that fails to "accord[] with reason and probability," and the court should "avoid an absurd construction." *Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. Dist. Ct. App. 2003); *see also Whitley v. Royal Trails Prop. Owners Ass'n, Inc.*, 910 So. 2d 381, 383 (Fla. Dist. Ct. App. 2005) ("The court should reach a contract interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties."). "A true ambiguity does not exist merely

because a document can possibly be interpreted in more than one manner." *Lambert v. Berkley S. Condo. Ass'n*, 680 So. 2d 588, 590 (Fla. Dist. Ct. App. 1996); *Saha v. Aetna Casualty & Sur. Co.*, 427 So. 2d 316, 317 (Fla. Dist. Ct. App. 1983) (requiring a "genuine inconsistency, uncertainty or ambiguity in meaning after resort to the ordinary rules of construction" for there to be an ambiguity).

A court should give a term its "natural, ordinary meaning", *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) (applying Florida law), and should not, in attempting to find an ambiguity, create obligations that were not part of the original bargain. *John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*, 443 F. App'x 396, 399 (11th Cir. 2011) (applying Florida law). If both parties assert that a term is unambiguous but propose contrasting interpretations, the court does not have to hold the term to be ambiguous. *See Kipp*, 844 So. 2d at 693-94; *see also Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252-53 (11th Cir. 2008) (applying Florida law). In such situations, the court should look to the consistency of each interpretation with the contract as a whole to determine if one of the interpretations is unreasonable. *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1296-97 (M.D. Fla. 2009); *Barakat v. Broward Cnty. Hous. Auth.*, 711 So. 2d 1193, 1195 (Fla. Dist. Ct. App. 2000) ("It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain").

As demonstrated below, the District Court's interpretation is consistent with the remainder of the agreement, and common sense, while Dr. Krauser's interpretation is unreasonable, not based on the natural and ordinary meaning of the terms at issue, and would impose an additional burden on the Defendants.

### A. The District Court's interpretation of "currently" is the only reading consistent with the remainder of the Agreement

The term "currently" or "current" is used three other times in the operative portions of the agreement. In all three cases, "currently" is used in a manner fully consistent with the District Court's interpretation of Paragraph 8 to refer to the dental implant products being manufactured at the time the Settlement Agreement was executed.

For example, in Paragraph 1, the phrase "the dental implant system currently being manufactured by the Debtors" is used to refer to the dental implants being manufactured by Minimatic at the time of the contract, in which Dr. Krauser had asserted rights in his pre-petition filings before the bankruptcy court (that is, claims that were pending in 1996). A812. Paragraph 2 again uses the phrase "the dental implant system currently being manufactured by the Debtors" to refer to dental implant products at the time of contract execution, this time in connection with Dr. Krauser's execution of a license to "any and all rights he may have" in those implants. A813. Dr. Krauser's attorney admitted to the District

47

Court that the future-looking construction of "currently being manufactured by the Debtors" he seeks for Paragraph 8 would be inconsistent with the meaning of the phrase in these other provisions. A2010 33:16-20, A2011 34:4-19. But under Florida law, "the same word of phrase used in different provisions…of a contract" should be "presumed, in the absence of language plainly indicating the contrary, to have been used in the same sense throughout the contract." *Shuford Dev. Co. v. Chrysler Corp.*, 449 F.2d 429, 436 (5th Cir. 1971) (applying Florida law).

The term "current" also appears in Paragraph 3 of the Agreement. As recognized by the District Court, Paragraph 3 comprises a clear indication of the intended meaning of the term "currently" as used in other sections of the agreement, for it contrasts the dental implant products described in the attached "current product catalog" with other dental implant products manufactured by the Debtors (or their successors) in the future. A15-16. Specifically, in imposing payment obligations on future as well as current products, Paragraph 3 of the Agreement refers to:

> all dental implant products set forth and described in the Debtors' **current product catalog**, a copy of which is attached hereto as Exhibit "B"*,* **as well as any other dental implant products** of any kind or nature whatsoever which are designed and/or used for dental implantology **which are sold by the Debtors, any subsidiary thereof or any successor owner of the Debtors by merger or acquisition, now or in the future**, whether they be listed for sale or not in any current or future Minimatic…catalog.

48

A814 (emphasis added). As the District Court observed, this provision shows the language used by the contracting parties to encompass future implant products and confirms that the reference to "the dental implant system **currently** being manufactured by the Debtors" refers to those in existence at the time the contract was entered into, and not those created in the future. A16.

This conclusion is further confirmed by the fact that Paragraph 8 refers only to the dental implant system manufactured by "the Debtors" and not those manufactured by their successors or other future entities. In Paragraph 3, where the Agreement expressly encompasses future dental implant products, the Agreement refers not just those marketed by the Debtors, but also those marketed by "successor owners of the Debtors by merger or acquisition." A814 ¶ 3(a)(i); *see also* A815 ¶ 3(b) (referring to payments in future years of a percentage of "net sales by the Debtors, any subsidiary thereof or any successor owner of the Debtors by merger or acquisition"). By contrast, Paragraph 8 refers only to "the dental implant system currently being manufactured **by the Debtors**," and does not refer to successors, reinforcing the conclusion that only the implants in existence at the time of the agreement were intended. *See Kel Homes, LLC v. Burris,* 933 So. 2d 699, 703 (Fla. Dist. Ct. App. 2006) ("[T]he use of different language in different contractual provisions strongly implies that a different meaning was intended.").

Dr. Krauser contends that the District Court's interpretation of Paragraph 8 would render his rights meaningless because, according to Dr. Krauser, "the only remedy for BioHorizons' default … would be a suit by Krauser for a declaration of rights **in the potentially old and outdated 1996 System."** Krauser Br. 40 (emphasis in original). Nonsense. Paragraph 8 expressly provides Dr. Krauser with the option to sue for money damages. A813-19. That Dr. Krauser has chosen not to pursue a damage case does not render that remedy meaningless.[13]

Moreover, the declining value of Dr. Krauser's opportunity to seek a declaration of his rights arises from his 13-year delay between entry into the contract and his claim of default, during which time Dr. Krauser enjoyed the fruits of his bargain, including payment of monies under Paragraph 3. That is, the dental implant system at issue under Paragraph 8 is 13 years out of date because Dr. Krauser waited to accrue the full 10-year term of payments under Paragraph 3 before declaring a default. It is entirely just and proper that the value of declaring a default should decline as the benefits already obtained increase.

Moreover, that Dr. Krauser was limited to seeking ownership rights in the dental implants being manufactured by Minimatic in 1996 is the natural

---

[13] Far more likely, given Dr. Krauser's failure to identify any actual amount owed, is that Dr. Krauser has not in fact suffered any money damages.

consequence of the circumstances under which the Agreement was executed.  At

that time, Minimatic was attempting to exit bankruptcy unencumbered by existing

claims.  Paragraph 8, as construed by the District Court, serves the logical and

salutary purpose of fixing the scope of ownership claims Dr. Krauser could assert

in the future, thereby permitting the Debtors and others to invest in the

development of new implant systems, without the chilling effect of a possible

claim by Dr. Krauser against those too.  Allowing a debtor to move forward in this

fashion, free of old claims, is the purpose of bankruptcy.

### B.   The District Court's interpretation of "currently being manufactured by the Debtors" constitutes an independent ground of affirmance

If this Court affirms the District Court's construction of Paragraph 8,

that holding would provide an independent basis for affirming the grant of

summary judgment.  Dr. Krauser's Second Amended Complaint seeks a

declaration of ownership *only* over BioHorizons' Tapered Internal Implant

products.  A273 wherefore clause *i*.  It is undisputed that the Tapered Internal is a

different product than any that were being manufactured by Minimatic/BioLok in

1996.  As an initial matter, the BioHorizons Tapered Internal implants are

marketed under separate FDA regulatory 510(k) clearances than the

Minimatic/BioLok implants, and they are manufactured by BHIS, not Minimatic or

BioLok.  *See, e.g.*, A1211-25.  Moreover, the BioHorizons Tapered Internal

implants are different from the earlier implants. Dr. Krauser, in his affidavit in opposition to summary judgment, conceded that the BioHorizons Tapered Internal implant was "a new dental implant line" that represented an "expansion and improvement over the Minimatic 1991 Implant System and the BioLok 1996 Implant System." A1324-27 ¶¶ 36, 41 (Krauser Aff). His opposition motion similarly conceded that, "[o]bviously, the 1996 and 2009/2012 versions of the dental implant system are different, as it has evolved over time (like any other product on the market)." A1290-91 ¶ 23 n.5.

Hence, whether or not the BioHorizons Tapered Internal implants represent the "evolution" of Minimatic's 1996 implants, Dr. Krauser has conceded that they are different. It is thus undisputed that the BioHorizons Tapered Internal is **not** "the dental implant system currently being manufactured by [Minimatic/BioLok]," as required by Paragraph 8 under the construction given that provision by the District Court. This alone suffices to uphold the District Court's grant of summary judgment.

# CONCLUSION

For the reasons set forth above, this court should affirm the judgment

below.

Date: January 17, 2014                    Respectfully submitted,

                                          __/s/ Christopher N. Sipes_____
                                          Christopher N. Sipes
                                          Michael N. Kennedy
                                          COVINGTON & BURLING LLP
                                          1201 Pennsylvania Avenue, N.W.
                                          Washington, D.C. 20004
                                          P: 202-662-6000

                                          F: 202-662-6291

                                          *Attorneys for Defendants-Appellees*

## PROOF OF SERVICE

I HEREBY CERTIFY that on this 17th day of January 2014, I

electronically filed the foregoing document with the Clerk of the Court using

CM/ECF. I also certify that the foregoing document is being served on all counsel

of record on the following service list by electronic delivery:

Robert Unikel
Deanna Keysor
Michelle Marek
KAYE SCHOLER LLP
70 W. Madison Street
Suite 4200
Chicago, Illinois 60602
robert.unikel@kayescholer.com
deanna.keysor@kayescholer.com
michelle.marek@kayescholer.com

Ronald M. Gaché
Scott A. Simon
SHAPIRO FISHMAN & GACHE LLP
2424 North Federal Highway
Suite 360
Boca Raton, Florida 33431
rgache@logs.com
ssimon@logs.com

*Counsel for Plaintiff-Appellant Jack T. Krauser*

　　/s/ Christopher N. Sipes
Christopher N. Sipes
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Telephone: (202) 662-5525
Fax: (202) 662-6291
Email: csipes@cov.com
*Attorney for Defendants-Appellees*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief of Defendants-Appellees complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and contains 12,350 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b).

I certify that this brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been composed in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Minion Pro font.

  /s/ Christopher N. Sipes
Christopher N. Sipes
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Telephone: (202) 662-5525
Fax: (202) 662-6291
Email: csipes@cov.com
*Attorney for Defendants-Appellees*